UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JIANMEI CAO,<br><br>            Petitioner,<br>   v.<br><br>BRUCE SCOTT, *et al.*,<br><br>            Respondents. | CASE NO. 2:25-cv-02373-RSM-GJL<br><br>REPORT AND RECOMMENDATION<br><br>Noting Date: February 10, 2026 |

Petitioner Jianmei Cao, proceeding with counsel, is currently detained by U.S. Immigration and Customs Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 4-1. She has been detained since May 25, 2025. *Id.* at 3. On November 25, 2025, Petitioner filed an amended Petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, seeking release from custody. *Id.*

Having considered the parties' submissions, the balance of the record, and the governing law, the Court **RECOMMENDS** the amended habeas Petition (Dkt. 4-1) be **GRANTED**, Respondents' request that the Petition be dismissed (Dkt. 8) be **DENIED**, and that the

REPORT AND RECOMMENDATION - 1

Government be **ORDERED** to release Petitioner from custody on reasonable conditions of supervision.

## I.     BACKGROUND

### A.    Factual Background

Petitioner is a native and citizen of China. Dkt. 10, Lambert Decl., Ex. B. at 2. Petitioner was admitted to the United States on March 15, 1997, on a visitor visa. *Id.* In 2000, Petitioner pled guilty to alien smuggling, in violation of 8 U.S.C. § 1324(a)(1)(A)(iv), but was released on her own recognizance after serving six months in jail. *Id.*, Ex. A at 1. Four years later, an Immigration Judge ("IJ") ordered Petitioner's removal from the United States. Dkt. 9, Melendez Diaz Decl. at 2. She appealed the removal order to the Board of Immigration Appeals ("BIA"). *Id.* The BIA remanded the case to the IJ, but the IJ again ordered Petitioner be removed. *Id.* Petitioner appealed her removal a second time, but the BIA dismissed her appeal on January 26, 2010. *Id.* The Ninth Circuit Court of Appeals affirmed the BIA's decision and dismissed the appeal on July 27, 2014. *Id.*; *Cao v. Holder*, No. 10-70557 (9th Cir. June 16, 2014).

On May 20, 2025, Petitioner attended a United States Citizenship and Immigration Services ("USCIS") interview on her I-485 Application to Register Permanent Residence or Adjust Status ("I-485 Application"), which she filed in 2024. Dkt. 9, Melendez Diaz Decl. at 2. The Government denied Petitioner's I-485 Application and detained her. *Id.* She has been detained at NWIPC since May 25, 2025. *Id.*

Petitioner resided in California before ICE detained her, where she lived with her husband. Dkt. 4-1 at 5. She fears a return to China is not possible because her father was persecuted there for his political beliefs. *Id.*

REPORT AND RECOMMENDATION - 2

B. **Procedural Background**

On November 24, 2025, Petitioner, through counsel, submitted her federal habeas petition to this Court for filing, alleging that her continued detention violates her rights to procedural and substantive due process guaranteed by the Fifth Amendment. Dkt. 1. Petitioner filed an amended Petition to correct several deficiencies contained in the original petition. Dkts. 4, 4-1. The amended Petition was served on Respondents, and on December 5, 2025, they filed a Response to the amended Petition, asking that it be dismissed. Dkt. 8. The Respondents also filed supporting declarations of Deportation Officer Yralees Melendez Diaz and Assistant United States Attorney Michelle Lambert. Dkts. 9, 10. Respondents represent to the Court in their Response that ICE is working to obtain Petitioner's passport from the Chinese government to facilitate her removal. Dkt. 8 at 8. Respondents state that Petitioner has refused to cooperate in the process of obtaining a valid Chinese passport, intentionally slowing the removal process. *Id.* at 10.

On December 8, 2025, Petitioner filed a Traverse opposing the Response, together with supporting exhibits. Dkts. 11, 11-1. After reviewing the parties' submissions, the Court issued an Order on December 18, 2025, directing Respondents to address their argument in the Response that Petitioner refuses to cooperate in the process to obtain a new Chinese passport. Dkt. 13 at 2. The Court ordered Respondents to address this issue because Petitioner argues that the Chinese consulate will not issue her a new passport while she is in ICE's custody. Dkt. 11 at 4.

The next day, the Respondents submitted a supplemental declaration from Deportation Officer Melendez Diaz explaining that the Government can obtain a travel document "to remove Chinese citizens with final removal orders to China. No in-person interview is required for issuance of a travel document." Dkt. 14-1 at 2. This declaration also clarified that removal of

REPORT AND RECOMMENDATION - 3

Petitioner is not contingent on her obtaining a new Chinese passport. *Id.* The submission of the supplemental declaration completed the briefing in this matter, making it ripe for review.

## II.        DISCUSSION

**A.        Indefinite Detention**

Plaintiff contends she is detained in violation of the Due Process Clause of the Fifth Amendment because her removal is not reasonably foreseeable under *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Government disagrees and claims Petitioner's removal is reasonably foreseeable. The parties agree Petitioner is detained under 8 U.S.C. § 1231. Under § 1231, the government must detain a noncitizen during the 90 days following the entry of the removal order, during which time ICE attempts removal. 8 U.S.C. § 1231(a)(2)(A). Petitioner was detained by ICE on or about May 25, 2025; the 90-day removal period has expired. After 90 days, the government may detain the noncitizen or release the noncitizen under supervision. § 1231(a)(6).

While the Government may detain a noncitizen, § 1231 "does not permit indefinite detention." *Zadvydas*, 533 U.S. 678 at 689. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693. Due process requires a noncitizen be detained under § 1231 no longer than "a period reasonably necessary to bring about . . . removal from the United States." *Id.* at 689. Detention is presumptively reasonable for six months after the removal period. "After this six-month period, once the [noncitizen] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701. If the Government fails to rebut the noncitizen's showing, the noncitizen is entitled to habeas relief.

REPORT AND RECOMMENDATION - 4

1    Petitioner's detention in 2025 exceeds the six-month presumptively reasonable limit that

2 *Zadvydas* noted. The record shows that Petitioner's removal became final on July 27, 2014, but

3 there is no evidence the Government attempted to remove her until May 2025. After detaining

4 Petitioner, the Government realized that she lacked a travel document necessary to remove her to

5 China. While the Government avers it is now taking steps to obtain the necessary travel

6 document, the request to the Chinese Embassy has not yet been completed. *See* Dkt. 14-1 at 2.

7 The Government, however, contends that this process typically takes approximately thirty days.

8 *Id.*

9    This argument diverges from the original position the Respondents presented to the Court

10 in their Response. There, Respondents argued that the delay in removing Petitioner was due, in

11 part, to her fault because she refused to cooperate in the process to get a new Chinese passport,

12 which was necessary to remove her to China. Dkt. 8 at 8–9. Now, however, Respondents state in

13 the supplemental declaration that "ICE does not obtain a passport at this time for individuals

14 from China such as Petitioner and is not seeking to obtain a passport for Petitioner; ICE is

15 securing only a Travel Document." Dkt. 14-1 at 2.

16    Thus, it is undisputed that Petitioner has been detained for more than six months, and the

17 Government still has not obtained the necessary travel document to remove her, or even

18 completed the application for the travel document. And it appears from Respondents'

19 supplemental declaration that Petitioner's inability to get a Chinese passport did not delay her

20 removal to China because ICE does not need to obtain a passport to remove someone to China.

21    In sum, in making an individualized determination, the Court finds Petitioner has met her

22 burden to show good reason to believe there is no significant likelihood of her removal in the

23 reasonably foreseeable future. Petitioner has met her burden because the Government has only

24

provided vague timeframes for her removal and has not even completed a travel document request to submit to China. *See Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 50 (D.D.C. 2002) (removal not reasonably foreseeable where government had "not demonstrated . . . that any travel documents are in hand, nor have they provided any evidence, or even assurances from the [foreign] government, that travel documents will be issued in a matter of days or weeks or even months"); *see also Andreasyan v. Gonzales*, 446 F.Supp.2d 1186, 1189–90 (W.D. Wash. 2006) (finding removal not likely in reasonably foreseeable future when noncitizen detained for eight months and consulate stated only that case was still under review pending a decision).

As Petitioner has met her initial *Zadvydas* burden, the burden shifts to Respondents to rebut her showing. The Court concludes the Respondents have failed to do so.

After the Court's December 18, 2025, Order, Respondents submitted a supplemental declaration of Deportation Officer Melendez Diaz, stating that the Government's travel document request has been finalized, but it has not yet been sent to the Chinese Embassy. Dkt. 14-1 at 2. This process, according to the Government takes approximately thirty days. *Id.* This argument, along with the now-refuted passport argument in the Response, fails.

By the Government's own admission, Respondents have not secured the travel document necessary to remove Petitioner during her eight months of detention. Respondents represent they are actively working on procuring a travel document, but this is a statement that applies to every removal case and thus this fact alone does not establish a reasonable likelihood of removing Petitioner in the foreseeable future. Worse yet, this argument fails to explain why Respondents have been unable to acquire a travel document for the past eight months.

Respondents' claim that the procuring of the travel document could take thirty days seems to rest on the claim that if they submit the travel document to the Chinese Embassy, a

travel document might issue, and it is reasonably likely Petitioner will be removed because China has accepted the return of some of its citizens who are subject to removal. The Court finds these representations are speculative and fail to rebut Petitioner's contention her removal is not reasonably foreseeable. *See e.g. Huynh v. Bondi*, C25-2371-KKE, 2025 WL 3718991, *4–6 (W.D. Wash. Dec. 23, 2025).

The Court agrees with Petitioner that because China has severely limited the repatriation of its citizens from the United States, it makes it less likely her removal will occur in the reasonably foreseeable future. *See* Dkt. 4-1 at 9; Dkt. 11 at 10. In addition, the Government has not secured a travel document, so there is little basis to conclude China is even accepting Petitioner's return. Further, Respondents fail to set forth anything showing whether China issues travel documents to all its citizens or just some of them. Respondents' generalized arguments concerning the potential repatriation of Petitioner to China and the possibility of procuring her travel document is insufficient to show China will accept Petitioner. *See Yang v. Kaiser*, No. 2:25-CV-02205-DAD, 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) (removal not reasonably foreseeable where respondent states individuals had recently been removed to China, whereas petitioner showed the Chinese government had been designated as recalcitrant to repatriation and that respondents had failed for years to deport him to China).

Therefore, the Court finds Respondents' representations are insufficient to rebut Petitioner's showing. "Courts in this circuit have regularly refused to find Respondents' burden met where Respondents have offered little more than generalizations regarding the likelihood that removal will occur." *Nguyen v. Scott*, No. 2:25-CV-01398, 2025 WL 2419288, at *16 (W.D. Wash. Aug. 21, 2025); *Singh v. Gonzales*, 448 F. Supp. 2d 1214, 1220 (W.D. Wash. 2006). As

Respondents have failed to rebut Petitioner's showing, the Courts finds she is entitled to *Zadvydas* habeas relief.

**B.      Third Country Removal**

Petitioner argues Respondents should be barred from removing her to a third country because such removal is impermissibly punitive. Dkt. 4-1 at 18–19. In addition, she contends if Respondents pursue her removal to a third country, she is entitled to certain procedural protections before such removal occurs. *Id.* at 17–18. There is no dispute Respondents possess the authority to remove Petitioner to a third country. The dispute surrounds the process by which the third country removal might occur.

Petitioner asks for notice and an opportunity to respond if the Government should attempt third country removal. Respondents claim Petitioner's request should be dismissed as premature because there is no ongoing effort to remove her to any third country and DHS policies provide her the protections she is seeking. Dkt. 8 at 11. While Respondents claim they are not presently attempting a third country removal, they do not address the possibility that they may prospectively revisit or change this position.

Further, the Court takes judicial notice of its own records that Respondents have previously taken the position "DHS has the authority to effect third country removal without the involvement of an immigration judge, without reopening removal proceedings and without giving a noncitizen an opportunity to present a CAT claim 'within 24 hours after the third country agrees to accept [him] and a Notice of Removal is served.'" *Ghasedi v. Wamsley*, 2:25-cv-01984-RSM, Response, Dkt. 6 at 11-12. However, while DHS has the authority to designate a country of removal, "it must exercise that authority in an appropriate way." *Aden v. Nielsen*, 409 F. Supp. 3d 998, 1009 (W.D. Wash. 2019). It is axiomatic that the Respondents must comply

REPORT AND RECOMMENDATION - 8

with due process. Here, should DHS seek to remove Petitioner to a third country, due process requires DHS to move to reopen removal proceedings, and a hearing must be held before an IJ so the Petitioner can apply for relief as to the specific country of removal.

The Court accordingly finds Petitioner must be given sufficient notice of a third country of deportation that, given her capacities and circumstances, she would have a reasonable opportunity to raise and pursue her claim for withholding of deportation. *See Nguyen*, 2025 WL 2419288 at *18. Due process includes the right to "a full and fair hearing, an impartial decisionmaker, and evaluation of the merits of his or her particular claim." *Id.* The due process clause requires the government to "provide a meaningful opportunity to be heard on asylum and withholding claims." *Id.* These requirements "flow directly from binding Ninth Circuit precedent," and to the extent ICE policy contradicts them, it is unlawful. *Id*. at *19 ("It would be impossible to comply both with Ninth Circuit precedent and the policy.").

The Court notes that if the Government moves forward with removal to a third country without reopening removal proceedings, thereby disregarding the requirements of due process as laid out in *Nguyen*, 2025 WL 2419288, and the Ninth Circuit precedent upon which it relies, Petitioner would be free to move for injunctive relief, demonstrating her entitlement to an injunction, and the likelihood of irreparable harm.

### III.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** the amended habeas Petition (Dkt. 4-1) be **GRANTED**, Respondents' request that the Petition be dismissed (Dkt. 8) be **DENIED**, the Government be **ORDERED** to release Petitioner from custody on reasonable conditions of supervision, and Respondents **SHALL PROVIDE** Petitioner with notice of at least three days

REPORT AND RECOMMENDATION - 9

(72 hours) and an opportunity to respond to any third country removal attempt by providing a reopened removal proceeding before an IJ.

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), the parties shall have fourteen (14) days from service of this report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on February 10, 2026, as noted in the caption.

Dated this 26th day of January, 2026.

Grady J. Leupold
United States Magistrate Judge

REPORT AND RECOMMENDATION - 10